IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>DENNIS JALI, et al.,<br><br>　　　Defendants. | Civil No. **PJM-20-cv-2492** |

## MEMORANDUM OPINION

On August 28, 2020, Plaintiff Commodity Futures Trading Commission ("CFTC") filed this action against Defendants Dennis Jali ("Jali"), Arley Ray Johnson ("Johnson"), John Frimpong ("Frimpong"), 1st Million LLC ("1st Million"), Smart Partners LLC ("Smart Partners"), and Access to Assets LLC ("A2A"). The Complaint alleges that Jali, Johnson, and Frimpong, through and on behalf of 1st Million, Smart Partners, and A2A, operated a fraudulent commodity interest pool in violation of the Commodity Exchange Act, 7 U.S.C. §§ 1–26 (2018), and 17 C.F.R. pts. 1–190 (2019). ECF No. 1.

Johnson failed to timely respond to the Complaint. In consequence, CFTC moved for entry of default. After the Clerk entered default, Johnson took note and filed a Motion to Vacate Order of Default, which Judge Hazel of this Court denied without prejudice. Currently before the Court is Johnson's Renewed Motion to Vacate Order of Default (ECF No. 40). No hearing is necessary. For the reasons that follow, the Motion will be **GRANTED**.

### I.   BACKGROUND

Judge Hazel fully set forth the facts of this case in his Memorandum Opinions dated June 1, 2021, and May 24, 2022. *See* ECF Nos. 31, 38. Facts relevant to the pending motion are repeated

here. According to CFTC, Defendants fraudulently solicited over $28 million from members of the public by falsely promising them that they would become participants in a commodity interest pool (the "1st Million Pool") established for trading foreign exchange contracts ("forex") and digital assets such as bitcoin. ECF No. 1 ¶¶ 1, 30. Defendants allegedly accomplished this fraudulent solicitation, in part, by invoking religious parlance and pitching the 1st Million Pool as a means of obtaining financial freedom to support churches and charitable religious causes and including making misrepresentations regarding the nature, performance, and operation of the 1st Million Pool. *Id.* ¶¶ 4, 33, 41.

According to CFTC, Defendants represented that (1) participant funds would be held in trust and then returned to participants in their entirety at the end of the pool participation term; (2) participant funds would be used to trade forex and bitcoin through pooled trading accounts; (3) all trading would be done by licensed, experienced traders; and (4) participants would receive guaranteed returns generated by Defendants' trading. *Id.* ¶¶ 4, 30, 36–37, 41–46, 50–52. The CFTC contends that in fact Defendants did not hold participant funds in a trust or escrow account, and instead opened at least nine bank accounts where the funds were commingled with Defendants' personal funds. *Id.* ¶¶ 5, 54, 60. Moreover, Defendants allegedly used at least $7 million of the $28 million in participant funds for personal and business expenses, *id.* ¶ 60, and no 1st Million Pool funds were used for forex trading. *Id.* ¶ 56.

As for Johnson's involvement in the scheme, CFTC alleges, among other things, that by May 2018, he had become the Chief Operating Officer of 1st Million and was responsible for accepting participant funds and issuing so-called return payments, paying the lease for the Defendants' offices, and managing payroll. *Id.* ¶ 13. Further, Johnson "solicit[ed] and accept[ed] funds" from the public, *id.* ¶ 72, and was a signatory on at least one of the bank accounts

Defendants opened and maintained in furtherance of their scheme, *id.* ¶ 54. According to CFTC, Johnson also "falsely represented to at least certain participants that Jali was a licensed trader who came from the New York Stock exchange" and that "all of the traders at 1st Million were experienced traders", which was false. *Id.* ¶ 44.

CFTC filed its Complaint on August 28, 2020, and the record reflects that Johnson was served on November 4, 2020. ECF No. 20. On October 6, 2020, the United States applied to intervene in the case pursuant to Federal Rule of Civil Procedure 24, seeking to stay discovery pending the resolution of a parallel criminal case. ECF No. 16 at 1. CFTC took no position on the United States' Motion to Stay. *Id.* ¶ 11. Johnson's answer to the Complaint was due on November 25, 2020, but he never responded. Accordingly, on May 12, 2021, CFTC requested that the Clerk of the Court enter default against him, ECF No. 23, which the Clerk entered on May 14, 2021. ECF No. 24. The corresponding notice sent to Johnson informed him that he had thirty days "to file a motion to vacate the order of default". ECF No. 29. The United States' Motion to Stay remained pending at that time.

On June 1, 2021, Judge Hazel granted the United States' motion to intervene and to stay discovery. ECF No. 31 at 10. He also granted CFTC's motions to extend time to serve Defendant Jali, who apparently had fled the United States in May 2019 and was arrested by South African authorities in August 2020. *Id.* at 9. Judge Hazel further ordered that, upon Defendant Jali's extradition to the United States, CFTC had 90 days to serve him. ECF No. 32. On June 11, 2021, counsel for Johnson entered a "limited appearance" to obtain a stay in the civil proceedings against him, including to allow for the filing of a Motion to Vacate Default. ECF No. 33 at 2. A few days later, Johnson filed said motion through counsel. ECF No. 34. Judge Hazel denied it without

prejudice, allowing Johnson fourteen days to file a renewed motion addressing the factors set forth in *Payne ex rel. Est. of Calzada v. Brake*, 439 F.3d 198, 204–05 (4th Cir. 2006). ECF No. 38 at 6.

Fourteen days later, Johnson filed the present Renewed Motion to Vacate Order of Default. ECF No. 40. He asserts that because the United States' Motion to Stay was pending at the time his Answer was due and was unopposed by CFTC, Johnson believed he did not need to file a response. *Id.* at 7. He further asserts that he acted with reasonable promptness in filing his Motions to Vacate and has posited a meritorious defense, and that vacating the default will not prejudice CFTC because CFTC has not yet served Defendant Jali, "the individual controlling the fraudulent conduct". *Id.* at 4–8. Johnson therefore asks the Court to vacate the default entered against him. The Court finds his claim meritorious.

## II.  STANDARD OF REVIEW

In a similar case, Judge Xinis concisely described the relevant standard for motions to vacate default:

> A court may "set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The United States Court of Appeals for the Fourth Circuit has announced a "strong policy that cases be decided on their merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). Therefore, a motion to vacate default must be "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments." *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969). "Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." *Id.* The moving party "should proffer evidence that would permit a finding for the defaulting party." *Russell v. Krowne*, No. DKC 08-2468, 2013 WL 66620, at *2 (D. Md. Jan. 3, 2013).
>
> In determining whether to set aside an entry of default, the Court considers if the movant has a meritorious defense, acted with reasonable promptness, and bears personal responsibility for the entry of default. *See Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203 (4th Cir. 2006). The Court also must consider if the delay of proceedings caused any prejudice to the non-moving party, any history of dilatory action, and the availability of lesser sanctions short of default judgment. *See id.; see also Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010).

*Kihn v. Vavala*, No. 18-cv-02619-PX, 2019 WL 2492350, at *2 (D. Md. June 14, 2019) (granting Defendant's motion to vacate entry of default and denying Plaintiff's motion to strike Defendant's belated answer); *see also Braxton v. Jackson*, No. 18-cv-1946-DKC, 2020 WL 6889257, at *2 (D. Md. Nov. 24, 2020) (granting Defendant's motion to vacate entry of default and ordering Defendant to file a supplemental answer).

### III. ANALYSIS

CFTC does not allege that Johnson had a history of dilatory action beyond his failure to respond here, and states that any prejudice to CFTC from the delay "should not significantly influence this Court's determination of whether to vacate the entry of default". ECF No. 41 at 14. The Court therefore focuses on the following factors: whether (1) Johnson has a meritorious defense; (2) whether he acted with reasonable promptness; and (3) whether he bears personal responsibility for the entry of default.

A meritorious defense must be more than a conclusory statement of fact. *See Kihn*, 2019 WL 2492350, at *2. However, "[t]he burden for proffering a meritorious defense is not onerous". *See Russell v. Krowne*, No. DKC 08-2468, 2013 WL 66620, at *2 (D. Md. Jan. 3, 2013). The defaulting party need only "allege sufficient facts that, if true, would constitute a defense". *Id.* (quoting *U.S. v. Signed Pers. Check No 730 of Yubran S Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010)).

Johnson claims that "the bulk of the allegations of fraudulent conduct relate to and focus on Jali," not him personally. ECF No. 40 at 4. He further argues that he was "duped as a victim on the *outside* of" the conspiracy and that his participation in the scheme was based on "misplaced but sincere reliance on misinformation provided by the actual conspirators". *Id.* at 5. Therefore, according to Johnson, CFTC cannot show that he acted with the requisite intent. While the Court

does not necessarily embrace Johnson's claims, it need not determine their veracity at this stage. *Russell*, 2013 WL 66620, at *2. For now, the Court is satisfied that Johnson has presented sufficient facts that, if believed, would "permit either the Court or the jury to find for [Johnson]." *U.S. v. Moradi*, 673 F.2d 725 at 727 (4th Cir. 1982).

Next, the Court considers whether Johnson acted with "reasonable promptness". *Payne*, 439 F.3d at 204. Given that Johnson was unrepresented when he was served with the Complaint and that he complied with the Clerk's notice informing him that he must move to vacate the entry of default within 30 days, the Court finds that Johnson promptly sought to remedy his deficiency. CFTC does not contest this point. ECF NO. 41 at 5–6.

Finally, Johnson has offered a convincing explanation for his delay. He submits that he did not file a timely answer to CFTC's Complaint because, by the time it was due, the United States had filed a Motion to Stay that CFTC did not oppose. Johnson reasonably believed that when the Motion to Stay was filed, it triggered a pause in activity that suspended his pending deadline to respond. The Court need not deeply analyze Johnson's inaction here because moving under Rule 55(c) to vacate the Clerk's entry of default does not require a finding of excusable delay. *See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 420–21 (4th Cir. 2010). Instead, the Court looks to whether the defaulting party offers a rational explanation for the default and, if so, the Court will excuse the delay of answer unless the defaulting party acted in bad faith. *Russell*, 2013 WL 66620, at *3 (citing *Mezu v. Morgan State Univ.*, No. 09-2855, 2010 WL 1068063, at *6 (D. Md. Mar. 18, 2010)).

Given "the strong policy that cases be decided on their merits", *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), the Court finds that the delay in this case is tolerable. Although Johnson "may have been somewhat at fault" for his failure to timely respond, "this fact

alone [does] not mandate denial" of his motion to vacate. *Kihn*, 2019 WL 2492350, at *2–3 (quoting *Wainright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F.Supp.2d 712, 720 (D. Md. 2001)). Further, granting Johnson relief is unlikely to prejudice CFTC, given that it has not yet served Jali and the case remains stayed. The Court therefore finds that the *Payne* factors weigh in favor of granting Johnson's Renewed Motion to Vacate Order of Default.

### IV.   CONCLUSION

For the foregoing reasons, the Renewed Motion to Vacate Order of Default, ECF No. 40, is **GRANTED**.

The stay will remain in place given that Johnson's criminal case is presently on appeal. *See* ECF No. 49.

Johnson shall file an Answer to the Complaint within 15 days of the date on which the stay is lifted.

A separate Order will **ISSUE**.

January __23__, 2024

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE